**IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | | |
|---|---|---|---|
| **ALEXAM, INC.** | § | | |
| **Plaintiff** | § | | |
| | § | | |
| **V.** | § | **Cause No.  2:10cv93** | |
| | § | | |
| **BEST BUY CO., INC., ET AL.** | § | | |
| **Defendants** | § | | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are the following: Defendants' Motion to Reconsider the Court's Memorandum Opinion and Order on Claim Construction (Dkt. No. 191); Defendant Best Buy Stores, L.P.'s Motion to Reconsider the Court's Memorandum Opinion and Order Regarding Claim Construction (Dkt. No. 192); Alexsam's Motion for Reconsideration of the Court's Memorandum Opinion and Order on Claim Construction (Dkt. No. 193); and Defendants' Notice of New, Additional Evidence in Support of Their Motion to Reconsider the Court's Memorandum Opinion and Order on Claim Construction (Dkt. No. 215). The Court, having reviewed the relevant briefing, issues the following order.

<u>**Background**</u>

This is the sixth lawsuit that Plaintiff Alexsam, Inc. ("Alexsam") has pursued in the Eastern District of Texas alleging infringement of the patents-in-suit, U.S. Patent Nos. 6,000,608 ("the '608 patent") and 6,189,787 ("the '787 patent"), which relate to stored value/debit cards such as gift cards, phone cards, and medical savings account cards.  This case involves claims of patent infringement brought by Alexsam against seven issuers of electronic gift cards: (1) Barnes

1

& Noble, Inc. and Barnes & Noble Marketing Services Corp.; (2) The Gap, Inc. and Direct Consumer Services, LLC; (3) J.C. Penney Company, Inc. and J.C. Penney Corporation; (4) McDonald's Corporation and P2W, Inc. NFP; (5) Toys "R" Us—Delaware, Inc. and TRU-SVC, LLC; (6) The Home Depot, U.S.A., Inc. and Home Depot Incentives, Inc. (collectively "Defendants"); and (7) Best Buy Stores LP ("Best Buy").

On April 9, 2012, the Magistrate Judge issued a Memorandum Opinion and Order on Claim Construction ("*Markman* Opinion")(Dkt. No. 180).  Defendants ask the Court to overrule the Magistrate Judge's construction of "pre-existing standard point-of-sale device" and instead adopt a construction relied upon by Alexsam's expert at the U.S. Patent and Trademark Office ("PTO") adopted at the PTO by two separate Examiners.  Best Buy objects to the Magistrate Judge's construction of three claim terms: (1) "pre-existing standard retail point-of-sale device;" (2) "swiped/swiping;" and (3) "bank processing hub computer." Alexsam objects to the Magistrate Judge's construction of "unmodified existing standard point-of-sale device" and "unmodified existing standard retail point-of-sale device."

## Standard of Review

28 U.S.C. §636(b)(1)(A) and Local Rule 72(b) state that the District Court shall set aside any portion of the Magistrate's Order that is "clearly erroneous or contrary to law."

## Discussion

### A.      "Bank Processing Hub Computer"

1.      Parties' Positions

The parties proposed the following constructions for "bank processing hub computer" which occurs in claims 1, 2, and 19 of the '787 Patent.

2

| Alexam | Defendants |
|--------|------------|
| A computer, other than a processing hub, ***that is maintained by a bank***, that facilitates the card transaction and that is remote from the pre-existing standard retail point-of-sale device. | A computer, other than a processing hub, ***at a bank*** that facilitates the card transaction and that is remote from the pre-existing standard retail point-of-sale device. |

2.    Analysis

The Magistrate Judge first noted that in *Alexsam v. Datastream Card Services Ltd.,* Cause No. 2:03cv337 (Dkt. No. 199)("the *Datastream* Order"), Judge Ward construed the term "bank processing hub computer" as a "computer, other than a processing hub, that is maintained by a bank, that facilitates the card transaction and that is remote from the pre-existing standard retail point-of-sale device."  *Datastream* Order at pgs. 17-18.  This construction was also adopted by Judge Ward in *Alexsam v. IDT Corp.*, Cause No. 2:07cv420 (Dkt. No.105)("the *IDT* Order") and by Judge Everingham in *Alexsam v. UnitedHealth Group*, Cause No. 2:07cv512 (Dkt. No. 102)("the *UnitedHealth* Order") and *Alexsam, Inc. v. Pier 1 Imports*, Cause No. 2:08cv15 (Dkt. No. 157) ("the *Pier 1* Order").

Based on language in the specification describing the "bank processing hub computer," Defendants sought an adjustment of the construction so that the computer must be "at a bank." According to Defendants, this adjustment is necessary because Plaintiff has attempted to utilize the language "maintained by a bank" in prior cases to expand the scope of this claim term to include computers that should be considered outside the scope of the term in light of statements in the intrinsic record.  The Magistrate Judge concluded Judge Ward's and Judge Everingham's prior construction appropriately reflected the meaning of "bank processing hub computer" as used in the claims and is supported by the intrinsic evidence as a whole.

3

In its motion for reconsideration, Best Buy asserts Alexsam has misused Judge Ward's construction "to blur, if not completely eradicate, the distinction intended by Judge Ward between the phrase 'transaction processor,' used in the claims of the '608 patent, and 'bank processing hub computer,' used in the claims of the '787 patent." (Dkt. No. 192 at pg. 11). According to Best Buy, although Judge Ward's construction of this term, as adopted by the Magistrate Judge, was intended to distinguish bank computers from non-bank computers, Alexsam has been interpreting the words "maintained by a bank" broadly to cover computers owned and operated by and located at non-banking entities.   Best Buy asserts this broad interpretation would encompass computers owned and depreciated by the retailer and which a bank cannot access on its own because government financial regulations require certain kinds of encryption for messages to the actual bank.

The Court is not convinced Judge Ward's construction, later adopted by Judges Everingham and Craven, should be modified to clarify that the computer must be a computer of a banking entity and not a non-banking entity.   Best Buy has not clearly established a manifest error of law or fact.   The Court construes "bank processing hub computer" to mean "a computer, other than a processing hub, that is maintained by a bank, that facilitates the card transaction and that is remote from the pre-existing standard retail point-of-sale device."

## B.   "Unmodified Existing Standard Point-Of-Sale Device" and "Unmodified Existing Standard Retail Point-Of-Sale Device"

### 1.   Parties' Positions

"Unmodified existing standard point-of-sale device" appears in claim 60 of the '608 patent, and "unmodified existing standard retail point-of-sale device" appears in claims 1, 34, 50, and 57 of the '608 patent.  The parties proposed the following constructions for these terms.

4

**Unmodified Existing Standard Point-of-Sale Device:**

| Alexam | Defendants |
|--------|-----------|
| A terminal for making purchases of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware *for use in routing transactions in the card system*. | A terminal for making purchases of the type in use as of July 10, 1997 and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware *for use in the card system.* |

**Unmodified Existing Standard Retail Point-of-Sale Device**:

| Alexam | Defendants |
|--------|-----------|
| A terminal for making purchases at a retail location of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware *for use in routing transactions in the card system*. | A terminal for making purchases at a retail location of the type in use as of July 10, 1997 and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware *for use in the card system.* |

2.      Analysis

With regard to these claims, Defendants sought the construction used in the *Datastream* case, and Alexam requested a clarification relating to the phrase in the prior construction "for use in the card system." According to Alexsam, its proposed clarification reflects the relevant "use" of the POS devices in the claimed systems and methods and is more consistent with the specification.

In the *Datastream* case, Judge Ward construed the term "unmodified existing standard retail point-of-sale device" to mean "a terminal for making purchases at a retail location of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." *Datastream* Order at pg. 9.

This construction was adopted again by Judge Ward in the *IDT* case and by Judge Everingham in the *Pier 1* case. Similar constructions were also adopted for the similar term "unmodified existing standard point-of-sale device" by Judge Ward in *Alexsam v. Humana*, Cause No. 2:07cv288 (Dkt. No. 114)("the *Humana* Order") and by Judge Everingham in the *UnitedHealth* case. *Humana* Order at pg. 8; *UnitedHealth* Order at pg. 1.

The Magistrate Judge declined to amend the constructions to clarify that the POS terminal ". . . has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use ***in routing transactions*** in the card system." The Magistrate Judge concluded Alexsam's proposed broadening of the constructions was not supported in the intrinsic record. The Magistrate Judge construed "unmodified existing standard point-of-sale device" as "a terminal for making purchases of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." She construed "unmodified existing standard retail point-of-sale device" to mean "a terminal for making purchases at a retail location of the type in use as of July 10, 1997, containing magnetic stripe reading electronics, that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system."

Alexsam objects to the Magistrate Judge's constructions, asserting no party proposed that the latter term be limited to terminals "containing magnetic stripe reading electronics," and no intrinsic evidence supports this additional limitation.  According to Alexsam, the Magistrate Judge rejected a similar proposal from Best Buy seeking to limit the term "swiping" to only reading through a magnetic stripe reader.

6

The Court agrees that the term "unmodified existing standard retail point-of-sale device" should not be limited to terminals "containing magnetic stripe reading electronics." However, the Court disagrees with Alexsam's proposed clarification, not being convinced that "perceived ambiguities in the meaning of the caveat of Judge Ward's construction 'for use in the card system' have arisen" which warrant clarification. (Dkt. No. 193 at pg. 3-4). Alexsam's proposed broadening of the constructions for "unmodified existing standard point-of-sale device" and "unmodified existing standard retail point-of-sale device" is not supported by the intrinsic record and was properly rejected by the Magistrate Judge. The claims of the '608 patent plainly state that the claimed terminal is "unmodified."

The Court construes "unmodified existing standard point-of-sale device" as: "a terminal for making purchases of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." The Court further construes "unmodified existing standard retail point-of-sale device" as: "a terminal for making purchases at a retail location of the type in use as of July 10, 1997 that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system."

## C. "Pre-existing Standard Retail Point-of-Sale Device"

### 1. Parties' Positions

The term "pre-existing standard retail point-of-device" appears in claims 1, 2, and 19 of the '787 patent.

| Alexam | Defendants |
|---|---|
| A terminal for making purchases at a retail location of the type in use as of July 10, 1997. | A terminal for making purchases at a retail location of the type in use as of July 10, 1997 |

7

|  | ***and that has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system.*** |
|---|---|

2.      Analysis

Alexsam proposed the prior construction of the term ordered by the court in *Datastream*, *IDT*, *UnitedHealth*, and *Pier 1*. *Datastream* Order at pg. 18; *IDT* Order at pg. 17; *UnitedHealth* Order at pg. 2; *Pier 1* Order at pg. 2.  Defendants argued the construction should require that the POS device "has not been reprogrammed, customized, or otherwise altered with respect to its software or hardware for use in the card system." Defendants asserted their request was based on additional intrinsic evidence that had not previously been submitted to the court. Specifically, Defendants relied on statements made in two reexamination proceedings at the PTO which, according to Defendants, establish that the "pre-existing standard retail point-of-sale device" should be construed to mean an "unmodified" device.

The Magistrate Judge found no reason, based on two identical comments made in reexamination proceedings, to depart from Judge Everingham's earlier analysis in the *Pier 1* case.  *Pier 1* Order at pgs. 1-2.  The Magistrate Judge noted that, unlike in the '608 patent, none of the claims of the '787 patent contain the word "unmodified." *See Datastream* Order at pg. 18. According to the Magistrate Judge, Defendants' proposed construction improperly sought to import a limitation into the '787 patent claims that is not there, and the words of the claims did not permit interpreting "preexisting standard retail point-of-sale-device" as if it included the adjective "unmodified" where the applicant never included it and was not required by the PTO Examiner to include it.

In their motions for reconsideration, Defendants and Best Buy submit additional intrinsic evidence not previously submitted to the court when it construed the claim limitations in previous cases.  Given Judge Everingham's statement in the *Pier 1* case that the defendants' proposal was "not without force," Defendants and Best Buy assert the "significant new intrinsic evidence from the reexamination proceedings should tip the balance in favor of adopting Defendants' proposal."  (Dkt. No. 191 at pg. 6).

Defendants also filed a Notice of new, additional evidence in support of their motion for reconsideration ("Notice"), attaching a May 21, 2012 Notice of Intent to Issue Ex Parte Reexamination Certificate ("NIRC") in the reexamination of the '787 patent.  According to Defendants, the NIRC is intrinsic evidence that restricts the Court from adopting a construction of this term that is broader than the "unmodified" construction that the Examiner applied. (Dkt. No. 215 at pgs. 1-2).

According to Alexsam, on June 1, 2012, the PTO vacated the May 21 NIRC and issued a corrected NIRC, stating as follows:

> The previous NIRC is vacated and replaced by the instant NIRC in order to clarify the examiners use of the term 'unmodified' as corrected herein.

(Dkt. No. 222, Ex. 1 at pg. 2).  In each passage Defendants cite in their Notice, the inclusion of "unmodified" has now been removed.  There is therefore no basis for Defendants to continue to argue that the PTO Examiner viewed the claims of the '787 patent to require the further limitation "unmodified."

The Court defines this term to mean "a terminal for making purchases at a retail location of the type in use as of July 10, 1997."   As held by the Magistrate Judge, the Court declines to further restrict this term as proposed by Defendants.

**D.     "Swiping"/ "swiped"**

1.     Parties' Positions

The parties proposed the following constructions for "swiping"  which is present in claim 60 of the '608 patent and claim 19 in the '787 patent.  In the '608 patent, claim 60 uses the term "swiping" in the context of "swiping the card through an unmodified existing standard point-of-sale device." In the '787 patent, claim 19 uses the term "swiping" similarly in the context of "swiping said gift certificate card through a preexisting standard retail point-of-sale device."

| Alexam | Barnes & Noble, Gap, JC Penney, McDonald's, and Toys "R" Us | Home Depot and Best Buy |
|---|---|---|
| Passing or sliding a card through an electronic card reader | Passing or sliding a card through an electronic card reader | Sliding a card through an electronic card reader |

2.     Analysis

Alexsam's proposed construction of "swiping" and "swiped" followed the court's prior constructions of this term. *Datastream* Order at pg. 13; *IDT* Order at pg. 18; *UnitedHealth* Order at pg. 1; *Pier 1* Order at pg. 10. Five defendants agreed with this construction; Best Buy and Home Depot, however, argued "swiping" should be construed as "sliding a card through an electronic card reader."

In the *Datastream* and *IDT* cases, the court rejected the proposed construction "sliding a card with a magnetically encoded stripe through a magnetic stripe reader." *Datastream* Order at pg. 13; *IDT* Order at pg. 18. In both cases, "swiping" was construed as "passing or sliding

10

through an electronic card reader."   Best Buy acknowledged that the specifications of the patents-in-suit disclose alternatives to encoding data in a magnetic stripe, such as encoding data on a bar code or in the numeric data on the card surface, but Best Buy argued to the Magistrate Judge, regardless of how the data is encoded or embossed on the card, the patents-in-suit do not disclose a method of reading the "card activation data" that involves "passing."   According to Best Buy, to dispense with the requirement of physical contact in and out of the device would impermissibly read the "swiping through" limitation out of the asserted claims.

The Magistrate Judge was not convinced by Best Buy's arguments and did not require physical contact in and out of the device. According to the Magistrate Judge, Best Buy's argument that the ordinary meaning of "swiping through" requires physical contact is not supported in the claims or the specification and contradicts the prosecution history.

The Magistrate Judge's construction of these terms is consistent with four prior constructions by courts in this district. The Magistrate Judge correctly points out that the intrinsic evidence discloses a broad variety of point of sale devices and specifically discloses encoding data on cards in the form of a bar code.  Best Buy now argues, for the first time, that deleting the word "passing" from the construction would only exclude certain types of bar code readers.  (Dkt. No. 192 at pg. 10 n. 4).  Best Buy waived this argument by not raising it before the Magistrate Judge.  In any event, there is no support for any construction of these terms that would limit the claims to using any particular type of bar code reader.  As urged by Alexsam, the disclosed invention is not directed to any particular way of reading data from a card.

Best Buy has failed to clearly establish a manifest error of law or fact in the Magistrate Judge's construction of these terms.   For all these reasons, the Court construes the term

"swiping" as "passing or sliding a card through an electronic card reader."

**IT IS SO ORDERED**.

**SIGNED this 14th day of November, 2012.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE